**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANA HERES and DELFINA MCKINNON | 24cv7770 (SLT) |
| Plaintiffs | **SECOND AMENDED COMPLAINT** |
| - against - | |
| SEASONS AT MASSAPEQUA HOME OWNERS ASSOC. INC. and FPS PHASE II LLC d/b/a FAIRFIELD PROPERTIES | **JURY DEMAND** |
| Defendants | |

Plaintiffs, by their attorney, James E. Bahamonde from the Law Offices of James E. Bahamonde, PC, and for their complaint against Defendants respectfully allege:

## STATEMENT OF CLAIMS

1.     Plaintiffs bring this action against defendants SEASONS AT MASSAPEQUA HOME OWNERS ASSOC. INC. and FPS Phase II LLC d/b/a Fairfield Properties for declaratory judgment, injunctive relief, and damages on the basis of racial discrimination, failure to make a reasonable accommodation, unlawful statements, and retaliation in violation of the Fair Housing Act, 42 USC § 3601, *et seq*., New York State Human Rights Law, NYS Executive Law § 296, *et seq*., and Nassau County Administrative Code § 21-9 *et seq.*

2.     Plaintiffs seek declaratory, injunctive and equitable relief, as well as actual, nominal, compensatory damages, and fees and costs against Defendants.

3.     Plaintiffs seek punitive damages against each Defendant for their reckless and/or callous indifference to their rights under the Fair Housing Act, New York State Human Rights Law, and Nassau County Administrative Code.

## JURISDICTION AND VENUE

4.     That at all times mentioned hereinafter, Plaintiffs are now, and at all times

1

mentioned in this complaint, residents of Massapequa, New York.

5.      Venue is proper in this Court because the real property where the events occurred exists in this Nassau County.

6.      Venue is proper in this court because Plaintiffs and the Defendants are residents of Nassau County.

7.      Venue is proper in this Court because Defendant Seasons at Massapequa Home Owners Assoc. Inc.'s principal office is located in Nassau County.

8.      Plaintiffs invoke the jurisdiction of the Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 3613.

9.      The Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiffs' rights under the Fair Housing Act.

10.     The Court has supplemental jurisdiction over Plaintiffs' State and County law claims pursuant to 28 U.S.C. § 1367(a).

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, or omissions, giving rise to this action, including the unlawful practices alleged herein, occurred within the District.

**PARTIES**

12.     During all relevant times, Plaintiff ANA HERES was, and continues to be, a resident of Nassau County, New York.

13.     Ms. HERES is a black female who resides in a condominium unit within a condominium development named the Seasons of Massapequa. Ms. HERES has been, and continues to be, adversely affected by the acts, policies, and practices of Defendants and their

2

agents.

14.     During all relevant times, Plaintiff DELFINA MCKINNON has been a resident of Nassau County, New York. Ms. MCKINNON has been, and continues to be, adversely affected by the acts, policies, and practices of the defendants and their agents.

15.     Ms. MCKINNON is a black female who resides in a condominium unit with her daughter, Ms. HERES.

16.     During all relevant times, Defendant SEASONS AT MASSAPEQUA HOME OWNERS ASSOC. INC. (hereinafter referred to as 'Seasons at Massapequa') has been a domestic corporation authorized by the Secretary of State of New York to do business in New York State with its principal County of business designated as Nassau County.

17.     Defendant Seasons at Massapequa is governed by a Board of Directors consisting of five Directors, all of whom are either elected or designated.

18.     During all relevant times, Defendant FPS PHASE II LLC has been a domestic limited liability company authorized by the Secretary of State of New York to do business in New York State with its principal County of business designated as Suffolk County.

19.     Defendant FPS PHASE II LLC does business under the assumed name Fairfield Properties.

20.     During all relevant times, Defendant FPS PHASE II LLC d/b/a FAIRFIELD PROPERTIES (hereinafter "Fairfield Properties") has been the management company of the multifamily condominium development owned and controlled by Defendant Seasons at Massapequa Home Owners Assoc. Inc..

**STATUTORY SCHEME**

21.     Under the Fair Housing Act, New York State Human Rights Law, and Nassau

County Administrative Code, a housing provider is required to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford persons with disabilities equal opportunity to use and enjoy a dwelling.

22.     New York State Human Rights Law prohibits housing providers from making notices or statements which expresses, directly or indirectly, any limitation, specification or discrimination as to race, or any intent to make any such limitation, specification or discrimination.

23.     Likewise, the Fair Housing Act, New York State Human Rights Law, and Nassau County Administrative Code make it illegal to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any person in the exercise or enjoyment of any right granted under the FHA.

24.     To encourage owners of multifamily dwellings to be active supervisors of their subordinates, the Fair Housing Act imposes vicarious liability upon principals or employers for the acts of their agents or employees. Consequently, a principal is legally responsible for the acts, conduct, and statements of their agent.

## FACTUAL BACKGROUND

25.     In or about 2008, Ms. HERES purchased a townhouse located at the multifamily condominium development named the Seasons at Massapequa. The development consists of 210 townhomes and condominium units.

26.     In the same year, Ms. MCKINNON purchased a condominium unit in the Seasons at Massapequa.

27.     Upon purchasing the townhouse, Ms. HERES did not begin immediately residing

4

there because she was on active duty in the Army and stationed abroad.

28.    In November 2017, Ms. HERES received an honorable discharge from the Army. At the time of her discharge, Ms. HERES held the rank of Lieutenant Colonel.

29.    In December 2017, Ms. HERES returned to Massapequa but was unable to move into her unit as she was leasing it to another family. As a result, Ms. HERES began residing in the condominium unit owned by her mother, Ms. MCKINNON.

30.    While Ms. Heres was stationed abroad, she set up automatic payments for monthly HOA fees and common charges assessed by Defendant the Seasons at Massapequa to be deducted from her bank account. However, during her deployment to Afghanistan, Defendant Seasons at Massapequa increased these fees. Unaware of this, Ms. HERES did not adjust her automatic payments accordingly. Consequently, Defendant began issuing fines against Ms. HERES for failing to pay the full amount of the monthly fees and common charges.

31.    Though well aware that Ms. HERES was on active duty at the time she incurred the fines, Defendants refused to remove the fines imposed on Ms. HERES, as they were obligated to do, in violation of the Servicemembers Civil Relief Act.

32.    In January 2018, Ronald Branch -- who is white, and a board member of Defendant Seasons at Massapequa -- confronted Ms. HERES about the unpaid HOA fees and common charges, stating "you need to sell, you are not welcomed here. Go back where you came from." Soon after, as explained in further detail below, Defendants and their agents began a campaign of both racial and disability discrimination directed against Plaintiffs.

33.    Between 2018 and 2022, Defendants and their agents have used racial slurs and threats against Ms. HERES, littered her yard with dog feces, damaged each of their personal property, and subjected Plaintiffs to disparate treatment.

5

34.    During all relevant times, Mr. Branch has often incited other residents into threatening and insulting Ms. HERES.

35.    Between December 2018 and July 2021, Ms. HERES called 911 over ten times for help and protection from Defendants' physical confrontations, threats, and verbal assaults.

36.    In June 2019, Ms. HERES sold her condominium unit and paid the assessed fines that Defendants unlawfully refused to remove.

37.    Ms. MCKINNON has always made timely payments of the monthly common charges and fees in full.

**Unlawful Statements**

38.    During all relevant times, Defendants, through the actions of its agents, have made numerous unlawful statements to Ms. HERES.

39.    In March 2023, board member Donald Jenkins, who is white, told Ms. HERES, "you don't belong here." Mr. Jenkins has repeated this statement to Ms. HERES on multiple occasions.

40.    In 2023, Mr. Jenkins told Ms. HERES that he was going to make her "life so fucking miserable, it's going to be unbelievable."

41.    Since March 2023, Mr. Branch told Ms. HERES, "you need to leave this community," "we don't want to live around people like you," "you are the only and last blacks that will be living here," "when are you leaving," and "you don't belong here."

42.    Mr. Branch informed Ms. HERES that he is a retired police officer and, according to him, this provides him with special reverence.

43.    On another occasion, Mr. Branch claimed that he could shoot Ms. HERES and get away with it.

6

44.     In August 2023, Mr. Branch has called Ms. HERES a "nigger." Mr. Branch has referred to Ms. HERES by this epithet on multiple occasions over the years.

45.     In uttering the aforementioned unlawful statements, Mr. Branch acted with the consent of, under the control of, and/or within his actual and/or apparent authority as agent of Defendant the Seasons at Massapequa.

**Restrictions to Full Use and Enjoyment of the Community Center and its Amenities**

46.     Defendants and their agents have unlawfully discriminated against Ms. HERES on account of her race, and retaliated against her for asserting her statutory rights, and availing herself of the privileges available to her as a resident of the Seasons at Massapequa.

47.     During all relevant times, Joanne Collado has been the Property Manager of the Seasons at Massapequa, and is employed by Defendant Fairfield Properties.

48.     Defendant Seasons at Massapequa owns and maintains the community center and its amenities. The community center is a building centrally situated to all residential homes which contains a clubhouse, outdoor patio, fitness center, noncommercial kitchen, and outdoor pool. All homeowners, residents, and their respective family members and guests have a right of use and enjoyment, and access to, the community center and its amenities.

49.     In order to gain entry to the community center, Defendants issue each homeowner and resident an access card, which must be inserted into a device by the entry door to unlock it.

50.     In July 2021, Defendants deactivated Ms. HERES's access pass to the community center due to an unspecified "significant violation," without identifying which published rule, or provision of the governing documents was violated.

51.     The Declaration of Covenants and Bylaws which established Defendant Seasons at Massapequa prohibits the Board of Directors from enacting any rule or regulation that

perpetually restricts an owner or resident from the use and enjoyment of the common areas and facilities. In fact, the Declaration specifies that an owner or resident may not be penalized for a period exceeding 30 days for an infraction of the published rules and regulations.

52.     Defendants failed to reactivate Ms. HERES's access card after 30 days, which remains inoperate as of the date of this Complaint. .

53.     Since 2021,Ms. HERES has repeatedly asked Ms. Collado to reactivate her access pass, yet each request was ignored. To date, Defendants have refused to reactivate it.

54.     In or about August 2022, Ms. Collado informed Ms. HERES that she was restricted from accessing or using the community center and pool unless she is accompanied by the "homeowner of record" of the condominium unit -- i.e., her mother, Ms. MCKINNON. Ms. Collado reiterated this restriction to Ms. HERES again in 2023 and 2024.

55.     None of the governing documents, or published rules, of Defendant Seasons of Massapequa require residents to be accompanied by the homeowner of record when entering the community center or pool.

56.     Defendants have not imposed or enforced the same rule for other similarly situated residents at the Seasons of Massapequa.

57.     Since 2022, Defendant Seasons at Massapequa has imposed several fines on Ms. MCKINNON's unit because Ms. HERES entered the community center without being accompanied by her mother.

58.     Defendants have not issued fines against any other similarly situated resident for entering the community center without being accompanied by the "homeowner of record."

59.     The access pass to the community center has not been deactivated for any other resident in similar circumstances who entered the community center without being accompanied

by the "homeowner of record" of a condominium unit.

60.     From 2021 to the present, Defendants have made monthly requests to Ms. MCKINNON to pay the foregoing fines assessed by Defendant Seasons of Massapequa.

61.     In carrying out the aforementioned actions, Defendant Fairfield Properties's employee, Ms. Collado, acted with the consent of, under the control of, and/or within her actual and/or apparent authority as an agent of Defendants.

62.     In May 2024, Mr. Jenkins approached Ms. HERES and stated that she cannot use the pool and the clubhouse because Mr. Branch has informed him that she does not live there and has not been paying the 'HOA fees.' However, this is inaccurate. Ms. HERES had continuously resided with her mother since 2019, and Ms. MCKINNON has always timely paid the monthly common charges and HOA fees.

**Handicap Parking Space**

63.     During all relevant times, Defendants did not have a written or established policy or procedure for an owner or resident to request reasonable accommodations or modifications.

64.     In 2019 and 2023, Ms. HERES made several requests on behalf of Ms. MCKINNON for a "handicap parking space" with an access aisle and curb ramp.

65.     During all relevant times, Ms. MCKINNON has had a physical disability, which is obvious because she relies upon a wheelchair for mobility. Defendants were also made aware of Ms. MCKINNON'S disability through letters from her physician detailing her impairments and substantial walking limitations. Defendants have also interacted with and observed Ms. MCKINNON multiple times.

66.     When leaving home, Ms. HERES assists Ms. MCKINNON by pushing her manual wheelchair to the curb ramp. The curb ramp closest to Plaintiffs' unit can be accessed by

traversing a walkway approximately 125 feet in length. However, the walkway frequently becomes inaccessible when vehicles are parked in a manner where, as shown in the photograph below, the overhang of a vehicle obstructs the accessible route leading to the curb ramp. When this occurs, Ms. HERES and her mother are prevented from accessing the curb ramp.



67.    As such, Plaintiffs requested a reasonable accommodation to have a handicap parking space as described above.

68.    In April 2019 and June 2023, Ms. HERES informed Defendants and their agents of the curb ramp frequently being obstructed because of situations as depicted in the photograph above. Nevertheless, Defendants claimed that the walkway was not obstructed and denied their request for a handicap parking space in front of Ms. KINNON's condominium unit. Defendants further claimed that if a curb ramp was installed in front of their unit, it would cause a safety hazard and would require the elimination of a parking space, which Defendant Seasons at Massapequa claims would cause an undue burden.

69.    Defendant Seasons at Massapequa has also denied Ms. HERES and Ms. MCKINNON's request for a handicap parking space on the basis that Ms. MCKINNON does not

does own, or drive, a vehicle.

70.     Conversely, Mr. Jenkins has assigned for himself his own designated parking space located in front of his condominium unit. In January, February, May, and June 2024, Mr. Jenkins demanded Ms. HERES not to park in "[his] parking space," stating "you can't park here," "I am on the board and I'm going to make your life a living hell," and "I told you not to park here."

71.     Similarly, Mr. Branch has also designated for himself his own parking space and has gone as far as placing a sign in front of his townhouse identifying it as his reserved parking space.

72.     Defendants are aware of and have acquiesced to Mr. Jenkins and Mr. Branch's exhortations and designations of their own parking space.

73.     In carrying out the aforementioned actions, Mr. Jenkins and Mr. Branch, as members of the Board of Directors, acted with the consent of, under the control of, and/or within their actual or/or apparent authority as agents of the Defendants.

74.     Upon information and belief, Messrs. Jenkins and Branch do not have a physical disability which would lawfully entitle them to an assigned parking space.

**Retaliation**

75.     After making the aforementioned requests for a reasonable accommodation, Defendants and their agents began a campaign of retaliation against Ms. HERES and Ms. MCKINNON by subjecting them to disparate treatment, interference and intimidation. For example, as explained above, Defendants and their agents have restricted or hyper scrutinized Ms. HERES's access and use of the community center and its amenities, as well as uttered unlawful statements against Plaintiffs on the basis of race.

11

76.     As will be described below, Defendants have repeatedly refused to provide Ms. HERES with information and documents related to Ms. MCKINNON's condominium unit, despited being provied with Ms. MCKINNON's express written consent to such. Defendants have also refused to adjust the timing of the automatic sprinkler system that causes hazardous wet conditions on the walkway in front of Ms. MCKINNON's unit.

77.     On March 6, 2023, Ms. HERES filed a housing discrimination complaint with the New York State Division of Human Rights alleging racial and disability discrimination, and failure to make a reasonable accommodation.

78.     After filing a complaint with New York State Division of Human Rights, Board members Messrs. Branch and Jenkins began to verbally harass and make unlawful statements concerning Ms. HERES's race to her.

79.     Immediately after Ms. HERES filed the administrative complaint, Mr. Branch attempted to turn the other owners and residents against Ms. HERES by telling them that Ms. HERES is "suing us," "they don't pay their HOA fees," and "they need to move."

**Ledger**

80.     In 2015, Ms. MCKINNON gave Ms. Collado, the Property Manager of the Seasons at Massapequa, a copy of her duly executed power of attorney that authorizes Ms. HERES to act on her behalf in matters regarding her condominium unit. However, since 2019, Ms. Collado has repeatedly refused to answer questions from, or provide any documents to, Ms. HERES related to the community and the unit on the basis that Ms. HERES is not the owner.

81.     Nothing in the Declaration, Bylaws and Community Rules of Seasons of Massapequa restricts Defendant Fairfield Properties, or its employee Ms. Collado, from answering questions, or providing documents to residents unless they are the "homeowner of

record."

82.     Since 2015, Defendants and their agents have been aware that Ms. HERES is authorized to act on her mother's behalf under the power of attorney they have been shown, or furnished a copy of, on a number of occasions, including in 2015, 2016, 2021, 2023, and 2024.

83.     Ms. Collado has not required any other similarly situated owner or resident to be the "homeowner of record" before she answers their questions, or supplies them with a document related to a condominium unit.

84.     Moreover, Ms. Collado has not required any other similarly situated owner or resident to provide a copy of a power of attorney before she will answer their question(s), or furnish a document related to a condominium unit.

85.     In June 2024, Ms. HERES requested from Ms. Collado a copy of the ledger which details the charges, fees and fines associated with Ms. MCKINNON's condominium unit. Ms. Collado denied the request, claiming that Ms. HERES is 'not the owner' of the unit.

86.     Ms. HERES again provided Ms. Collado with a copy of Ms. MCKINNON's power of attorney, and a letter written by Ms. MCKINNON expressly authorizing Ms. Collado to provide Ms. HERES with a copy of the ledger. However, Ms. Collado still refused to fulfill this request. Afterwards, Ms. MCKINNON telephoned Ms. Collado and informed her that she authorizes Ms. HERES to be provided with a copy of the ledger, but like each previous time, Ms. Collado refused.

**Irrigation Sprinkler**

87.     Since 2019, Ms. HERES has, on a number of occasions, asked Defendants to adjust the sprinkler system so that it goes on after midnight to avoid getting wet and creating a slippery and hazardous condition on the walkway leading to her unit. Defendants have ignored

her multiple requests.

88.     In June 2024, Ms. HERES once again requested that the sprinklers turn on after midnight, but Defendants again ignored her request.

89.     The Defendants refused to adjust the schedule of the sprinkler system to go on after 12 AM on the basis of Ms. HERES' race and retaliation.

## LEGAL CLAIMS

### FIRST CAUSE OF ACTION
**(Violations of the Fair Housing Act, 42 USC 3604 et seq.)**

90.     Plaintiffs reallege and incorporate by reference all of the allegations set forth in this Complaint as if fully set forth herein.

91.     Plaintiffs are an "aggrieved person" as defined in 42 U.S.C. §§ 3602(i) and 3613(a)(1)(A).

92.     Defendant Seasons at Massapequa Home Owners Assoc. Inc.'s multifamily dwelling complex located in Massapequa contains four or more units. As such, it is a covered multifamily dwelling as defined in U.S.C. § § 3604(f)(7).

93.     Defendants have discriminated against Plaintiffs in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of race of that person in violation of 42 U.S.C. § 3604(b).

94.     Defendants have discriminated against Plaintiffs in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of a disability of that person, or a person residing in that dwelling, or any person associated with that person in violation of 42 U.S.C. § 3604(f)(2).

95.     Defendants have made or caused to be made, printed, or published any notice, or statements, with respect to the rental of a dwelling that indicate a preference, limitation, or

14

discrimination based on race and disability, or an intention to make any such preference, limitation or discrimination in violation of 42 U.S.C. § 3604(c).

96.    Defendants have discriminated against Plaintiffs by refusing to make reasonable accommodations in the rules, policies, practices, or services, when such accommodations were/are necessary to afford Plaintiffs with equal opportunity to use and enjoy a dwelling in violation of 42 U.S.C. § 3604(f)(3)(B).

97.    The accommodations requested by Plaintiffs are necessary to afford Ms. McKinnon with equal opportunity to use and enjoy a dwelling.

98.    The accommodations requested by Plaintiffs do not pose an undue burden.

99.    The requested accommodations do not fundamentally alter the nature of the housing provider's operation.

100.    As a direct and proximate result of Defendants' unlawful discrimination in violation of the Fair Housing Act, Plaintiffs have suffered, continue to suffer, and will in the future suffer, great loss of housing opportunity, great and irreparable loss and injury, physical and emotional distress and pain-- including but not limited to great levels of fear, anxiety, insomnia, indignity, humiliation, loss of self-esteem and self-confidence, and attendant bodily injury, violently ill, vomiting, stomach aches, physical pain, high blood pressure, migraine headaches, and otherwise sustained injury.

101.    Defendants' discriminatory actions were intentional, willful, and with reckless disregard for the rights of the Plaintiffs. Defendants also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under 42 U.S.C. § 3613(c), Plaintiffs are entitled to punitive damages.

## SECOND CAUSE OF ACTION
**(Coercion, Intimidation, Threaten, and Interference in**

15

**Violation of the Fair Housing Act)**

102.    Plaintiffs reallege and incorporate by reference all of the allegations set forth in this Complaint as if fully set forth herein.

103.    The conduct of Defendants constitutes retaliation, coercion, intimidation, threatening, and interference with Plaintiffs in the exercise or enjoyment of, or on account of, Plaintiffs having exercised or enjoyed any right granted or protected by the Fair Housing Act in violation of 42 U.S.C. § 3617.

104.    Plaintiffs were engaged in a protected activity.

105.    Requesting a reasonable accommodation and filing a complaint with the New York State Division of Human Rights are protective activities.

106.    Defendants were aware Plaintiffs engaged in protected activities.

107.    Defendants took adverse action against Plaintiffs because they requested a reasonable accommodation and filed a complaint with the Division of Human Rights.

108.    As a direct and proximate result of Defendants' unlawful discrimination in violation of the Fair Housing Act, Plaintiffs have suffered, continue to suffer, and will in the future suffer, great loss of housing opportunity, great and irreparable loss and injury, physical and emotional distress and pain-- including but not limited to great levels of fear, anxiety, insomnia, indignity, humiliation, loss of self-esteem and self-confidence, and attendant bodily injury, violently ill, vomiting, stomach aches, physical pain, high blood pressure, migraine headaches, and otherwise sustained injury.

109.    Defendants' discriminatory actions and retaliation were intentional, willful, and with reckless disregard for the rights of the Plaintiffs. Defendants also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in

16

knowledgeable inaction. As a result, under 42 U.S.C. § 3613(c)(1), Plaintiffs are entitled to punitive damages.

### THIRD CAUSE OF ACTION
### (Violations of New York State Human Rights Law)

110.    Plaintiffs reallege and incorporate by reference all of the allegations set forth in this Complaint as if fully set forth herein.

111.    Plaintiffs and Defendants are "persons" as defined in New York State Executive Law § 292(1).

112.    Plaintiffs' condominium is a "housing accommodation" as defined in New York State Executive Law § 292(10).

113.    Defendant's residential development is a "multifamily dwelling" as defined in New York State Executive Law § 292(12).

114.    Plaintiff Ms. MCKINNON has a disability as defined in New York State Executive Law § 292(21).

115.    Defendants have refused to rent, lease or otherwise denied to or withheld from Plaintiffs such housing accommodation because of disability in violation of New York State Executive Law §§ 296(5)(a)(1) and 296(5)(b)(1).

116.    Defendants have discriminated against Plaintiffs, on the basis of disability, in the terms, conditions or privileges of rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith in violation of New York State Executive Law §§ 296(5)(a)(2) and 296(5)(b)(2).

117.    Defendants have printed, circulated, or caused to be printed or circulated any statement or publication which has expressed, directly or indirectly, any limitation, specification

17

or discrimination as to race, or any intent to make any such limitation, specification or discrimination in violation of New York State Executive Law §§ 296(5)(a)(3) and 296(5)(b)(3).

118.    Defendants have aided, abetted, incited, compelled, or coerced the doing of any of the acts forbidden under New York State Human Rights Law, or attempted to do so in violation of New York State Executive Law § 296(6).

119.    Defendants have retaliated or discriminated against Plaintiffs because they have opposed any practices forbidden under New York State Human Rights Law in violation of New York State Executive Law § 296(7).

120.    Defendants have refused to make reasonable accommodation in rules, policies, practices, or services, when such accommodations may be necessary to afford Ms. McKinnon equal opportunity to use and enjoy a dwelling, including reasonable modification to common use portions of the dwelling in violation of New York State Executive Law § 296(18)(2).

121.    The accommodations requested are reasonable and do not impose an undue hardship.

122.    As a direct and proximate result of Defendants' unlawful discrimination in violation of New York State Executive Law, Plaintiffs have suffered, our continuing to suffer, and will in the future suffer, great and irreparable loss and injury including physical and emotional distress and pain -- including but not limited to great levels of fear, anxiety, insomnia, indignity, humiliation, loss of self-esteem and self-confidence, and attendant bodily injury, violently ill, vomiting, stomach aches, physical pain, high blood pressure, migraine headaches, and otherwise sustained injury.

123.    Defendants' discriminatory actions in violation of New York State Executive Law were intentional, willful, and with reckless disregard for the rights of the Plaintiffs. Defendant

also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under New York Executive Law § 297(10), Plaintiffs are entitled to punitive damages.

### FOURTH CAUSE OF ACTION
(Violations of Nassau County Administrative Code § 21-9 *et seq.*)

124.    Plaintiffs reallege and incorporate by this reference all allegations set forth in this Complaint as if fully set forth herein.

125.    Plaintiffs are in a protected status as that term is defined by Nassau County Administrative Code § 21-9.2.

126.    Plaintiffs and Defendants are "persons" as defined in Nassau County Administrative Code § 21-9.2(j).

127.    At all times stated herein, Ronald Branch, Donald Jenkins, and Joanne Collado acted as agents for Defendants as defined in Nassau County Administrative Code § 21-9.7(b)(1)

128.    Plaintiff Ms. MCKINNON has a disability as defined in Nassau County Administrative Code § 21-9.2(e).

129.    The community center and its amenities, and Plaintiffs' condominium unit are "housing accommodations" as defined in Nassau County Administrative Code § 21-9.7(b)(6).

130.    Defendants have treated Plaintiffs differently on the basis of their actual or perceived color in violation of Nassau County Administrative Code § 21-9.2(d).

131.    Defendants have treated Plaintiff Ms. MCKINNON differently on the basis of her actual or perceived disability in violation of Nassau County Administrative Code § 21-9.2(d).

132.    Defendants have discriminated against or harassed Ms. HERES and Ms. MCKINNON in the terms, conditions or privileges of the sale, rental, lease¸ or occupancy of any such housing accommodations or in the furnishing of facilities or services in connection

19

therewith because of the actual or perceived protected status as defined in Nassau County Administrative Code § 21-9.7(c)(1)(ii).

133.    Defendants have refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling in violation of Nassau County Administrative Code § 21-9.7(c)(1)(vi).

134.    Defendants have aided, abetted, incited, compelled, or coerced the doing of any of the acts forbidden under Nassau County Administrative Code, or attempted to do so in violation of Nassau County Administrative Code § 21-9.7(c)(3).

135.    Defendants have coerced, intimidated, threatened, harassed, or interfered with Plaintiffs (i) in the exercise or enjoyment of, or because he or she exercised or enjoyed any right granted or protected by this title; (ii) because he or she aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by this title; or (iii) because of the protected status of a person with whom such person has or is perceived to have a relationship or association use in violation of Nassau County Administrative Code § 21-9.7(c)(4).

136.    Notice of the civil action will be delivered in person to the County Attorney of Nassau County within 10 days of filing.

137.    As a direct and proximate result of Defendants' discriminatory conduct in violation of Nassau County Administrative Code, Plaintiffs have suffered, continue to suffer, and will in the future suffer, great loss of housing opportunity, great and irreparable loss and injury, physical and emotional distress and pain-- including but not limited to great levels of fear, anxiety, indignity, humiliation, loss of self-esteem and self-confidence, and attendant bodily injury, violently ill, vomiting, stomach aches, physical pain, high blood pressure, migraine

headaches, and otherwise sustained injury.

138.    Defendant discriminatory actions were intentional, willful, and with reckless disregard for the rights of the Plaintiffs. Defendant also knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction. As a result, under Nassau County Administrative Code § 21-9.7(d)(3)(i), Plaintiffs are entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendants as follows:

A.    Plaintiffs seek declaratory judgment, declaring that the conduct of Defendants constitutes violations of the Fair Housing Act Amendments, New York State Executive Law, and Nassau County Administrative Code.

B.    Defendants' agents, employees, and successors, and all other persons in active concert or participation be permanently enjoined from discriminating on the basis of race and disability, or perceived disability, against any persons in violation of the Fair Housing Act of 1968, as amended, New York State Executive Law, and Nassau County Administrative Code, including an injunction prohibiting the following:

i.    discrimination in violation of the Fair Housing Act, New York State Executive Law, and Nassau County Administrative Code;

ii.    Housing discrimination based on race and disability;

iii.    Making notices or statements that indicate a preference, limitation, or discrimination based on race and disability;

21

   iv.  Inferior terms, conditions, or privileges of a dwelling because of race and disability;

   v.  Aiding, abetting, coercing, intimidating, threatening, and discriminating based on race and disability;

 C.  Permanent injunction requiring Defendants to

   i.  Engage Plaintiffs in an interactive process to determine the necessary reasonable accommodations;

   ii.  Make the necessary reasonable accommodations;

   iii.  Make all necessary modifications to their policies, practices, and procedures to comply with fair housing laws;

   iv.  Train all board members, management, agents, and employees on fair housing laws and Servicemember Relief Act;

   v.  installation of the accessible parking space, access aisle, and curb ramp in front of the condominium unit owned by Ms. McKinnon.

 D.  Have the court retain jurisdiction over the Defendants until the Court is satisfied that their unlawful practices, acts and omissions no longer exist and will not reoccur.

 E.  Award such damages to Plaintiffs as will fully compensate for injuries caused by Defendants' unlawful practices in violation of the Fair Housing Act;

 F.  Award such damages to Plaintiffs as will fully compensate for injuries caused by Defendants' unlawful practices in violation of New York State Executive Law;

 G.  Award such damages to Plaintiffs as will fully compensate for injuries caused by Defendants' unlawful practices in violation of Nassau County Administrative Code;

H.     Award punitive damages to Plaintiffs for Defendants' violation of the Fair Housing Act, New York State Executive Law, and Nassau County Administrative Code;

I.     Award Plaintiffs reasonable attorney's fees, costs, and expenses incurred in prosecuting this action; and

J.     Grant Plaintiffs such other further relief as may be just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial on the merits by jury pursuant to Fed. R. Civ. P. 38.

Dated: June 5, 2025

**LAW OFFICES OF JAMES E. BAHAMONDE, P.C.**

By: /s/ James E. Bahamonde
        James E. Bahamonde
        2501 Jody Court
        North Bellmore, NY 11710-1940
        Tel. (646) 290-8258
        james@civilrightsny.com

        *Attorney for Plaintiff*

23